Next case United States v. Mann Kevin Shriner for the appellant, Wenxia Mann Ms. Mann respectfully requests that this court reverse her sentence in conviction for conspiracy to violate the Arms Exportation Control Act for two reasons. During my oral argument, Ms. Mann has raised a number of other issues on appeal in her brief. I will not address those arguments. Obviously, I am not conceding those arguments, but I will rely on the briefs for those. Two reasons Ms. Mann requests her conviction and sentence be reversed. One, that there is insufficient evidence that Ms. Mann actually entered into an agreement for purposes of a conspiracy. The second reason is that there is insufficient evidence that What this case really boils down to is an email that Ms. Mann sent to a business associate inquiring as to whether he could procure for her jet engines. Jet engines that would be on the USML, the United States Munitions List. Those are prohibited items to be exported abroad, specifically to the People's Republic of China. Eighteen months later, after she made this inquiry to the business associate, who she had an affiliation with because he was a franchisee of her capacitor company, contacts her at the behest of the Homeland Security agent. Eighteen months later, an inquiry is made to her as to, well, actually what he does explain to her is that he does have a supplier for the jet engines and that he can get her in contact with his supplier, which she ends up doing. So as to my first point, Ms. Mann contends that the evidence was insufficient, that an agreement exists between her and Mr. Zhang, who was her co-defendant. Mr. Zhang was located in China. And the argument for that is why it did not establish a conspiracy. And obviously, a conspiracy of the elements, as the Court is well aware, to violate the ACA would be an agreement to commit, obviously, an unlawful act. Obviously, more than one person participating. Obviously, there has to be an overt act, has to be knowing and willful of the violation. In this situation, if you look at the evidence that was presented at trial, Mr. Zhang, who was Ms. Mann's co-defendant, kind of followed a typical pattern in this case. He would make an inquiry into, either he would make the inquiry or Ms. Zhang would make an inquiry as to an item to procure. These things were jet engines. There was, at one point, discussions, I believe, of the Mars rover. There was a drone that was also, at one point, discussed. These inquiries would be made to the undercover agent. And there would then, from the undercover So ultimately, what happened was, really, what there is, it was never really an agreement between Ms. Mann and Mr. Zhang to actually procure, to export these prohibited items to the People's Republic of China. Really, what their argument was, or really what happened was, they really agreed to negotiate an agreement that really never came to fruition. And, as cited in the brief, Ms. Mann has cited United States v. Jones . . . You said, though, a plan may be pretty half-baked and still be a conspiracy, right? That's correct, Judge, and it can also be impossible, too. Also, even if it's an impossibility, it can still be a conspiracy. Yeah, a complete, detailed agreement is not necessary. It does seem to me that at least they had reached an agreement to search for a supplier before Mann and Zhang even became aware of Liu. I think that . . . I guess what one has to look at is the fact that when Ms. Mann made this inquiry into Mr. McCauley, who was her business associate, nothing happened for 18 months in that situation. Mr. McCauley, obviously, went to the Homeland Security agency, an undercover agent, and became involved in the case. And, through his actions, I think that what was initially . . . there's no proof that Ms. Mann, before the contact with Mr. McCauley and even during the period in which Mr. Zhang and the undercover agent broke off any type of negotiations, which is a period of 26 months, there's no indication that she was involved in any type of unlawful activity or that she would even have any way to source these products. Which leads me to my next point, and that is that the government didn't present sufficient evidence or there wasn't sufficient evidence for a jury to find predisposition on the part of Ms. Mann to enter into this conspiracy. She initiated the discussions with McCauley, right? That's correct, Judge. She initiated it. It was one initial email. Mr. McCauley came back to her. Liu repeatedly warned her that the proposals were illegal? At times he did, Judge. That's correct. Other times there was a little fuzziness to what he replied to her about or how exactly. Nevertheless, she persisted. And he persisted in return that he could obtain these objects, these prohibited articles, and transship them through a third-party country. That's correct. As far as her predisposition, though, I mean, looking at the factors for that, I think the evidence was the trial court did allow an entrapment defense for Ms. Mann, and the elements for that are obviously that she had an opportunity to back out of the proceedings or the agreement. Was there any type of post-arrest statement that she made? Does she have any prior offenses? And when you look at those kind of factors and just the evidence that was presented as far as predisposition, she had no criminal record, no arrest record, no history whatsoever, never been involved in any type of crime. There was actually an 18-month, as I've already said, there was an 18-month lull in the period of time between Ms. Mann actually contacting Mr. McCauley and actually Homeland Security being involved in the case. And as I mentioned earlier, prior to March of 2011, there was no evidence that she was engaged in any type of criminal activity or even attempting to procure these engines or any type of prohibited article under the USML. And then finally, again, another 27 months passed from the time Zhang and Agent Liu broke off negotiations until she was arrested. And during that period of time, there's absolutely no evidence that Ms. Mann continued this search for procuring these engines on the behalf of Mr. Zhang. She also didn't make any type of post-arrest statement regarding the conspiracy. Yes, I was involved in the conspiracy and I was attempting to get engines or other prohibited articles for Mr. Zhang. There's no evidence of that. And some of the discussions between Mr. Zhang and the undercover agent, Mr. Liu, actually he initiated one. At one point, Mr. Zhang said something about drones and Mr. Liu, the agent, came up with the MQ-9 Raptor and started to supply him with phony documentation to show that this is something that was achievable. So I think on two grounds. I think it's sufficiency of the evidence as far as the agreement between her and Mr. Zhang and I think sufficiency of the evidence as far as whether she did have an actual predisposition to commit this crime. If there's any questions, Judge, or further questions, I'll go ahead and reserve for rebuttal. Okay. Thank you, Mr. Schreiner. You're welcome, Judge. Thank you. Mr. Greenberg. Good morning. May it please the Court. Ben Greenberg for the United States. With me is Mike Wellesa, the AUSA who tried the case, and John Shipley who wrote the government's brief. This case shows that there was clearly a conspiratorial agreement between Ms. Mann and Mr. Zhang. The evidence of that agreement really falls into four buckets, all of which were admitted at trial. Emails and phone calls between Mann and Matt McCauley. Emails and phone calls between Mann and the undercover. Emails and phone calls between Mr. Zhang and the undercover. And finally, emails sent to Mann by unindicted co-conspirators. The case law makes it very clear, and even there is a part of Jones that makes this very clear, that to prove that there's an agreement between two co-conspirators, the government does not have to prove that it was successful. The government does not have to prove that every detail was finally worked out. In fact, what the cases show is that once these negotiations start in earnest, and there is an agreement between two co-conspirators, once certain steps are taken, in many cases it doesn't matter what happens next. What's most important in this case is that the agreement, putting aside the undercover, putting aside Matt McCauley, is that the agreement was between Ms. Mann and Mr. Zhang. In February or March 2011, when this conspiracy starts, right away it's clear that Ms. Mann and Mr. Zhang are talking to each other. They each know what the other one is thinking. They've entered an agreement to import from the United States to China certain munitions list items. The fact that they may have changed over time doesn't affect whether or not the conspiracy exists. I think it's exactly as Judge Pryor said, that once you have these initial conversations between the two of them, between a meeting of the minds, the conspiracy starts there. I obviously won't go through all of the phone calls and all of the exhibits, but as you look at even what happens right at the beginning of this conspiracy, it's abundantly clear from the conversations, it's a strong inference, there can be no other inference, that Ms. Mann and Mr. Zhang are having all of these conversations. Briefly, I'll talk about the United States versus Jones, a case that's relied on heavily in Ms. Mann's brief. Jones, as the court said in Jones, Jones is a very fact-specific analysis. But specifically, Jones is easily distinguishable for three reasons. First, this case is structurally entirely different from what happened in Jones. In Jones, all we were dealing with was conditional proposals. There was actually no meeting of the mind. Here, there may be conditions and certain facts and certain weapon systems that they desire, but there certainly was an agreement to import those items from the United States to China. Jones never got that far. Second, another problem in Jones was that the undercover had rejected the proposal, and so everything just stopped. Here, the undercover, first Matt McCauley and then the undercover, eagerly endorsed the proposal. They were negotiating over a period of a year and a half to get these weapons exported, so Jones is very different there. And finally, most importantly, in Jones, once the undercover stepped out of the equation, there was no conspiracy between the alleged co-conspirators. They never got together. They never did anything. Here, you have Zhang, Mann, and another unindicted co-conspirator talking early on. So I don't think that Jones saves the day for Ms. Mann. Next, I'd like to move to the entrapment issue that was just raised by counsel. Some of the same arguments that go to the heart of the conspiracy also defeat the entrapment argument. Essentially, the argument of counsel is that Ms. Mann was not committing any crimes before she was committing crimes or after she committed crimes. That has nothing to do with entrapment. The government need not prove that Ms. Mann had done this before. The government doesn't need to show that she was planning this, that she has a criminal record. As Judge Pryor said, what the evidence shows that when this conspiracy started, it started by Ms. Mann, nobody else. She sent an email with very clear instructions that she wanted to export the engines that are on the munitions list from the United States to China. It is very hard to imagine a situation. I'm not saying it's impossible, but it's quite hard to imagine a situation where the defendant initiates contact and there's a valid entrapment defense. Speak specifically to counsel for the defense's position that Mann and Zhang never agreed to specifics. In fact, Zhang pulled out because he didn't think it could be delivered. Speak to that specific argument. Sure, Your Honor. The first thing I would say is that I don't think legally that that makes any difference at all because they have a meeting of the minds to export certain items from the munition list, and they go ahead and try. Now, they keep changing some of the specs, presumably because Mr. Zhang's buyer, first they wanted an engine, then they wanted technology for it, then they wanted drones and they wanted decoys. The fact that they keep changing it doesn't defeat the existence of a conspiracy. They certainly had a meeting of the minds. If you look, Your Honor, at the first emails in February, October 2011, and then speed up a year and a half to the fall of 2012, they're clearly talking about what it is that they want. In fact, there really isn't evidence that Ms. Mann herself is coming up with the type of engines they want. She's only getting that from Mr. Zhang. So respectfully, Your Honor, I would say that counsel's argument, I think, is a version of the argument that because the conspiracy never resulted in actual weapons being shipped, that there's no agreement. And I just don't think that's the case law. The only other thing I'll mention on entrapment is that in addition to the fact that Ms. Mann is the person that initially reached out and that the government does not have to prove that she had done this crime before, what you have is after Mann submitted the proposal in early 2011. Fast forward a year and a half. When Mr. McCauley reaches out to her, she doesn't back away. In fact, what she does is that very same day, the exact day that Matt McCauley calls, now working with Homeland Security, she reaches out to Zhang and then calls McCauley right back. So she's not trying to get out of this conspiracy. The same is true. There are calls, tons of evidence, where Ms. Mann is in this with the goal of getting these weapons. She never backs out, and I just don't think that you can ever have, I don't want to say never, it is very hard to imagine certainly on these facts a valid entrapment defense where it's instigated by the defendant raising that defense. If there are no further questions, I'll yield the rest of my time. Thank you, Mr. Greenberg. Thank you.  Thank you, Judge. I guess really the issue then really becomes, what was the agreement between Zhang and Ms. Mann ultimately, whether she agreed to actually import these prohibited items or attempt to procure these prohibited items from China, or was the agreement to negotiate an agreement to attempt to get these items? I think what falls down in the conspiracy is that, again, as the government has alluded to, Mr. Zhang kept turning down these offers. What was the meeting of the minds between Ms. Mann and Mr. Zhang? Given the fluidity of the situation and the fact that Mr. Zhang was never satisfied with the offers that Mr. Lau made to him, it's hard to say that they really had a purpose or a desire that they were on the same page to say, hey, we're going to get these engines, bring out these prohibited items, and ship them to China. If there's not any further questions, I'll go ahead and concede the rest of my time and just ask the Court to reverse Ms. Mann's conviction and sentence on the basis of insufficiency of the evidence. Thank you. Thank you, Mr. Schreiner. We always appreciate Tom giving back to the Court. Thank you.